

United States District Court
Southern District of Mississippi
Northern Division

Scott Reeves
and Hung Thanh "Tim" Nguyen

Plaintiffs

v.

Civil Action No. 3:22-cv-42-KHJ-MTP

AV Nail Spa Ridgeland, Inc.
Michael Lam,
Vinh Ho,
Thanh Lan Do,
Thao Ha, and
Lan Khue Thi "Amanda" Huynh

Defendants

## Complaint

The plaintiffs Scott Reeves and Hung Thanh "Tim" Nguyen file this suit against the defendants for overtime compensation and for wrongful termination pursuant to the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 201 et seq. The plaintiffs also file suit for the defendants' failure to accurately report their income to the IRS on a 1099 form. Scott Reeves also sues for breach of contract under state law for failing to pay according to the agreed terms. Tim Nguyen and Scott Reeves also file suit for a McArn whistleblower claim under Mississippi law because they were discharged in retaliation for having reported criminal activity.

### *Jurisdiction*

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 26 U.S.C. § 7434(a). The court has supplemental jurisdiction over the state law claims of the named plaintiffs.

### *Plaintiffs*

2. The plaintiff Scott Reeves worked as an assistant manager of the defendant's nail salon in Ridgeland, Mississippi. He is a resident of Ridgeland, Mississippi. He was an employee as that term is defined by the FLSA of AV Nail Spa Ridgeland, Inc..

3. The plaintiff Hung Thanh Nguyen (Tim) worked as a nail tech at the defendants' salon in Ridgeland, Mississippi. He is a resident of Ridgeland, Mississippi. He was an employee as

1

that term is defined by defined by the FLSA as that term is defined by the FLSA of AV Nail Spa Ridgeland, Inc..

### *Defendants*

4. AV Nail Spa Ridgeland, Inc. is an employer as defined by the FLSA. 29 U.S.C. § 203(d). It operates a nail salon in the Renaissance at Colony Park in Ridgeland, Mississippi. It is part of a nationwide chain of 80 nail salons.

5. Michael Lam owns a portion of all 80 nail salons operated under the name AV Nail Spa, M. Vince Nail Spa and Anthony Vince Nail Spa. He is an employer of the plaintiffs as that term is defined by the FLSA. 29 U.S.C. § 203(d).

6. Vinh Ho also owns a portion of the 80 nail salons operated under the names AV Nail Spa, M. Vince Nail Spa and Anthony Vince Nail Spa. He is an employer of the plaintiffs as that term is defined by the FLSA. 29 U.S.C. § 203(d). He is listed as the president of A V Naill Spa Ridgeland, Inc. with the Mississippi Secretary of State.

7. Thanh Lan T. Do is the CFO for the 80 nail salons operating under the names AV Nail Spa, Anthony Vince' Nail Spa and M. Vince Nail Spa. She is an employer of the plaintiffs as that term is defined by the FLSA. 29 U.S.C. § 203(d). She is listed as the registered agent A V Naill Spa Ridgeland, Inc. with the Mississippi Secretary of State.

8. Thao Ha is a part owner of the Ridgeland location. He is also the manager of the Birmingham, Alabama location. He is also a partner or part owner at other locations. He is an employer of the plaintiffs as that term is defined by the FLSA. 29 U.S.C. § 203(d). He is listed as the secretary A V Nail Spa Ridgeland, Inc. with the Mississippi Secretary of State.

9. Lan Khue Thi "Amanda" Huynh is the manager of the nail spa in Ridgeland, Mississippi that operates under the name AV Nail Spa Ridgeland, Inc. She was an employer as that term is defined by the FLSA, 29 U.S.C § 203(d), of the plaintiffs Scott Reeves and Hung Thanh "Tim" Nguyen.

### *Facts*

10. The defendant AV Nail Spa Ridgeland, Inc. is part of a nationwide chain of nail salons that operates under the trade names of "Anthony Vince Nail Salon," "M. Vince Nail Spa" and "AV Nail Salon." The chain began in 2000 when Michael Lam incorporated Creation By Lam, Inc. in Ohio. That single location has since expanded to more than 80 salons in 26 states that today employs over 1500 nail techs.

11. The defendants Michael Lam and Vinh Ho own a portion of all 80 locations.   In some locations, they partner with other Vietnamese investors to own and operate the salons.

12.  The defendants' home office is in Cincinnati, Ohio. All of the corporate entities and LLCs use the same address at 8157 Laurel Court Lake, Liberty Township, Ohio. That is the same as the address reported to the Mississippi Secretary of State by the defendants Vinh Ho and Thao Ha.

13. By virtue of the defendants' joint ownership of all nail salons, they maintain a centralized control over (1) the practice of paying Vietnamese and other Asian nail techs 40% of their commissions in cash with no reporting to the IRS, (2) treating all nail techs as independent contractors, (3) filing informational returns with the IRS, (4) the ethnic demographics of the work force and (5) the training of managers of the local salons.

14. The individual defendants are Vietnamese.  Most of the 1500 nail techs employed by the defendants are Vietnamese.  A few are Korean or Chinese, even fewer are white or black.

15. The nail techs are classified as independent contractors and are paid on a commission basis.  They work 60 hours a week and do not receive any overtime pay.

16. The defendants pay non-Asian techs (black and white) 100% of their commissions by a payroll check and accurately reports the amount to the IRS on a 1099 form each year.

17. On the other hand, the defendants pay the Vietnamese and other Asian techs 60% of their commissions in a payroll check and report those earnings to the IRS on a form 1099.  The defendants pay the remaining 40% of the commissions in cash and do not report it to the IRS. The plaintiff Tim Nguyen was paid in this fashion.

### *Background on Scott Reeves and Amanda Huynh*

18.  Scott Reeves and Lan Khue Thi Huynh (a/k/a "Amanda") were married in 2013 in Prattville, Alabama.  Shortly thereafter, Amanda's Vietnamese parents and her brother and sister-in-law moved in with them.  Scott and Amanda had a child in January 2017.

19. In June 2017, Amanda went to work for the defendants' nail salon in Montgomery, Alabama.  The defendants also hired Scott Reeves to do odd jobs around the salon while he was recovering from injuries suffered in an auto accident.

20. Amanda handled all family finances, and Scott trusted her implicitly.  Their tax returns were prepared by a Vietnamese accountant in Atlanta.  In 2018, Amanda said that they could save on taxes by getting a "friendly" divorce.  In total reliance on her financial advice, Scott agreed.  They were divorced in Alabama in 2018 but continued to live together as a happy

3

couple. They both continued to wear their wedding rings. The divorce did not include a division of their marital assets.

### *Opening the Ridgeland Location.*

21. On December 9, 2018, the defendants opened a new nail salon in Ridgeland, Mississippi. Amanda was transferred there to manage that salon. She and Reeves moved to Ridgeland and rented a home together. Amanda's extended family also moved in.

22. Amanda reported to the CFO Lan Do in the home office as needed.

23. Amanda also hired Scott Reeves to work as the assistant manager. For the first two months, he worked from home handling various duties relating to opening the salon and staffing it up. As of March 1, 2019, he worked at the salon every day. He also performed duties as the receptionist and as a nail tech as needed.

24. Amanda agreed to pay Reeves $2,500 a month for his management duties, $15 an hour when he worked as the receptionist, and a 60% commission plus tips when he worked as a nail tech. To staff the salon, Amanda hired up to 20 nail techs, most of whom were Vietnamese. Amanda also hired her brother and his wife to work as nail techs.

25. To staff the salon, Amanda hired up to 20 nail techs, most of whom were Vietnamese. Amanda also hired her brother and his wife to work as nail techs.

### *Payroll Practices.*

26. On a daily basis, Amanda sent the home office a text message or an email reporting the salon's total revenue for the day.

27. At the end of each two-week pay period, Amanda reported to the home office the commissions and wages to be paid to the techs and other employees. Lan Do in the home office reviewed and approved each payroll. Amanda then prepared and signed payroll checks for the Asian nail techs for 60% of their commissions. Amanda then put the remaining 40% of their commissions in cash in envelopes. Non-Asian techs were paid all of their commissions by check. Amanda personally gave the envelope and the checks to the techs and other employees.

28. At the end of the calendar year, Amanda participated in preparing 1099s for nail techs and W2s for other employees in the Ridgeland salon. She reported that information to the home office so informational returns could be filed with the IRS.

29. In January of each year, the defendants filed an informational tax return with the IRS. The informational return fraudulently understates the actual earnings of Vietnamese and other Asian techs.

### *Wrongful Termination of and Failure to Compensate Scott Reeves*

30. Several nail techs including Tim Nguyen reported to Scott Reeves in his capacity as the assistance manager that they believed that Amanda was keeping some of their tips. The nail techs reasonably believed that shortchanging them on their tips was theft and criminal activity.

31. When Reeves handled the cash register, he observed some discrepancies that supported the techs suspicions. Reeves confronted Amanda and insisted that the techs should receive all of their tips.

32. Tim Nguyen and some nail techs asked Scott and Amanda to see the credit card charges and cash tip tickets to determine if they had received all of their tips. Amanda said if the techs did not trust her, they could quit.

33. Reeves also complained that the Asian nail techs should be classified as employees like the receptionists and get a W2 for all wages. Amanda responded that he did not understand how all Vietnamese nail salons operate.

34. Reeves also complained about the salon selling champagne after its license had expired. The Mississippi ABC ordered Amanda to remove the champagne but Amanda ignored that order.

35. The disagreements about the defendant's pay practices culminated in a heated discussion on July 27, 2020. During that argument, Amanda fired him and told him to move out of their family home.

36. Reeves moved into an apartment. At that time, he had no checking account in his name. He was not listed as a co-owner or a co-signor on any of the bank accounts maintained by Amanda. As noted above, Reeves had trusted Amanda explicitly with the family finances.

37. Reeves asked Amanda for a copy of his 2019 tax return and his last three paychecks so he could apply for a loan to attend cosmetology school. She gave him pay stubs in his name for the three pay periods between August 1 and September 15, 2020. Reeves immediately knew that the pay stubs were incorrect. Since he was fired on July 27, 2020, he did not work during those pay periods. Amanda explained that she may have used his name and SSN to pay Khuyen Ngoc a/k/a "Quinn," who was working illegally in the nail salon. Quinn was in the US on a student visa and was not legally allowed to work.

38. The 2019 tax return included Reeves' W-2 for 2019 which showed total earnings of $5,000. Amanda had told Reeves that he was making around $75,000 a year (i.e., $30,000 as the

manager, about $24,000 as a nail tech, and about $22,000 as the receptionist. Reeves knew the W-2 for $5,000 was a gross understatement of his compensation. He asked Amanda to explain. She said that 40% of his commissions were paid in cash and not reported to the IRS. Her explanation still did not account for the huge discrepancy.

39. During their marriage and post-marriage relationship (2013 - 2020), Amanda had always told Reeves that she deposited his earnings in the bank account that she used to pay family expenses. As noted above, Scott had never questioned her handling of the family finances.

40. Scott then asked for an accounting of all his pay. Amanda could not or would not provide it.

41. On August 10, 2020, Amanda finally admitted that his pay or some portion of it *(as a manager, a nail tech and a receptionist)* had been paid to her mother, Thu Lan Pham, so she could build her own credit history. Amanda's text message said, "all money you work under mom's name." Amanda's mother had never worked in the nail salon.

42. Amanda also said that some of his earnings was paid to Quinn.

43. Scott asked Amanda to pay him all of his compensation that the defendants had diverted to Amanda's mother and/or to Quinn.

44. He also asked for the payment of the $106,500 that he had contributed to their marriage and relationship in Alabama. The Alabama money consisted of (1) his half of the $91,000 profit from the sale of their house in Prattville, Alabama, (2) the $39,000 settlement for his personal injury case, and (3) the $22,000 on the sale of the property that Scott had inherited from his father. The "friendly" divorce in Alabama had not included a division of those marital assets.

45. Amanda offered to pay $48,000. Scott agreed to accept that amount under duress because he was in a financial jam. They signed a contract that Amanda had prepared. The $48,000 was a division of marital assets. It did not include any of the amounts owed to Reeves for unpaid compensation.

46. A few weeks later, one of the nail techs (Hung Nguyen aka "Tim") gave Reeves a petition dated 9/17/20 that had been signed by some of the techs complaining about Amanda charges. Tim knew that Reeves knew how to contact the owners in Ohio, so he asked him to confidentially pass the petition to them. Scott sent the petition to the defendants Vin Ho and Thanh Lan Do, the CEO and his wife,

47. Reeves reported to them that (1) Amada had diverted his earnings to her mother who did not even work in the salon, (2) Amanda had used his name and his SSN to pay Quinn, an illegal worker, (3) Amanda had been paying the Vietnamese techs 40% in cash and giving them inaccurate 1099 forms, and (4) Amanda had kept some of the tips owed to the nail techs.

48. Reeves verbally reported this information to the CFO Lan Do and sent her some documents. Lan Do responded that a team from the home office would travel to Ridgeland to investigate his claims. Reeves planned to meet with them and give them more documents.

49. On September 30, 2020, the defendants Thao Ha and Thanh Lan Do came to Ridgeland to investigate. They were accompanied by the wife of the founder, "Kristie" Khanh Ngo, who frequently assisted Lan Do on financial issues. They exchanged text messages with Reeves but did not meet with him. Reeves sent Thanh Lan Do a text message reporting that Amanda disposed of all payroll records. Thanh Lan Do responded with a "thumbs up" icon meaning that she approved and ratified Amanda's pay practices. They would not meet with Reeves.

### *Failure to Pay Overtime to and Wrongful Termination of Hung Thanh "Tim" Nguyen*

50. Hung Thanh Nguyen aka "Tim" had been a licensed nail technician for more than 10 years. Amanda hired him in February 2019 to work in the Ridgeland salon. Tim worked 60 hours a week with no overtime pay.

51. The defendants paid Tim 60% of his commissions by check subject to tax withholding. The defendants paid him 40% in cash with no withholding.

52. Customers frequently paid the nail techs a tip that typically ranged between $5 - $10. Sometimes, the customers gave a cash tip directly to the tech. On other occasions, the customer left a cash tip at the register or added a tip to the credit card purchase or a bank check. When the tip was paid at the register, the techs did not know if they had received a tip or the amount.

53. The nail techs had to rely on Amanda to pass those cash tips to them. Some techs believed that Amanda was keeping some of their tips.

54. Tim notified Reeves, the assistant manager, that he and some of the techs suspected that Amanda failed to pass all of their tips. They reported what they believed to be criminal activity of stealing some of their tips.

55. When Reeves handled the cash register, he observed some discrepancies that supported the techs suspicions. He confronted Amanda and insisted that the techs should receive all of their tips.

56. Tim Nguyen and some nail techs asked Amanda and Scott to see the credit card charges and cash tip tickets to determine if they had received all of their tips. Amanda said if the techs did not trust her, they could quit.

57. Amanda told Tim that she added his cash tips in his paycheck. Tim opposed that explanation because even if true it made the tips subject to an additional fee as if it was a credit card tip.

58. Amanda repeated that the techs could quit if they did not trust her.

59. After Amanda fired Scott Reeves in July 2020, Tim Nguyen and some tech thought that Amanda got more aggressive about keeping their tips. Amanda was also charging fees on each pedicure and a $5 a day charge for cleaning towels.

60. On September 17, 2020, some of the nail techs signed a grievance form about the $1 charge and Amanda's wrongdoings. They asked Scott Reeves (by then an ex-employee) to send the grievance to the company CEO in confidence.

61. The CEO alerted Amanda about the petition. On October 3, 2020, Amanda asked Tim if he had signed the grievance. When he acknowledged that he had, Amanda immediately fired him in retaliation for his having reported unlawful activity to management and in retaliation for his having made informal complaints to management cognizable under the Fair Labor Standards Act. 29 USC 215(a)(3).

62. Tim made $1,250 or more a week in commissions, 60% of which was paid by check and 40% was paid by cash. The nail salon did not report the 40% to the IRS and did not include the 40% on his 1099 form.

63. Tim worked 60 hours a week but did not receive overtime at 1½ times his regular rate for hours over 40 in a week.

### *Violations of Law*

64. The defendants failed to pay Scott Reeves his agreed compensation for his separate duties.

65. The defendants failed to give Scott Reeves and Tim Nguyen an accurate 1099 form and/or W-2 form showing wages actually earned.

66. The defendants submitted a fraudulent informational return to the IRS showing an incorrect amount of earnings made by Scott Reeves and Tim Nguyen in violation of 26 U.S.C. § 7434.

67. The defendants terminated Scott Reeves and Tim Nguyen in retaliation for their protests about the misclassification of nail techs under the FLSA in violation of 29 USC 215(a)(3).

68. The defendants terminated Scott Reeves and Tim Nguyen in retaliation for their having reported to management unlawful activity (theft of tips) under state law.

69. The defendants also terminated Scott Reeves in retaliation for his having complained about selling champagne in violation of Mississippi law.

### *Request for Relief*

70. Scott Reeves requests the following damages:
    a. Overtime pay for all hours worked over 40 in every week.
    b. Backpay from the date of his termination until the date of trial.
    c. Front pay from the date of the trial forward.
    d. Liquidated (double) damages pursuant to the Fair Labor Standards Act (FLSA).
    e. $5,000 in statutory damages for each year he received an inaccurate 1099 form.
    f. Damages for emotional distress.
    g. Punitive damages.
    h. Reasonable attorney's fees
    i. All compensation that he earned for the 20 months from 12/8/18 to 7/27/20 that was diverted by the defendants to Amanda's mother.

71. Tim Nguyen seeks the following damages:
    a. Overtime pay for all hours worked over 40 in every week.
    b. Backpay from the date of his termination until the date of trial.
    c. Liquidated (double) damages pursuant to the Fair Labor Standards Act (FLSA).
    d. Front pay from the date of the trial forward.
    e. $5,000 in statutory damages for each year he received an inaccurate 1099 form.
    f. Damages for emotional distress.
    g. Punitive damages.
    h. Reasonable attorney's fees

Dated: January 29, 2022

Respectfully submitted,

Mike Farrell

*/s/ Mike Farrell*

Mike Farrell
Miss Bar 5147
Law Office of Mike Farrell, PLLC
210 East Capitol Street
Regions Plaza, Suite 1088
Jackson, MS 39201
Tel: 601-948-8030
Fax: 601-948-8032
mike@farrell-law.net

10